## Case No. 9,707.

### MONCURE et al. v. DERMOTT.

[5 Cranch, C. C. 445.] [1]

Circuit Court, District of Columbia. March Term, 1838.[2]

USURY—SALE OF BOND—SURETY—BONA FIDES—CLOAK TO EVADE STATUTE—ESTOPPEL—ASSIGNOR OF BOND—WAIVER—TRIAL—RIGHT TO OPEN AND CLOSE.

1. A covenant absolutely to pay a usurious debt directly to the lender, is not a covenant simply to indemnify the surety, although delivered to the surety, but is a security for the usurious debt to the lender, especially if the instrument, upon its face, does not purport to be a covenant to the surety, but an undertaking to pay the debt directly to the lender of the money.

2. A covenant to pay an usurious debt to the creditor is void, under the statute of Virginia, although delivered to the surety, who was ignorant of the usury; it being a security for the usurious debt, and the surety who innocently pays the debt, cannot, upon that instrument, recover from the debtor money thus paid.

3. An assignor of a bond is not estopped to deny its validity in law.

4. Although the affirmative of the issue be upon the defendant in an action of covenant, yet as the plaintiffs must prove damages sustained by the breach of the covenant, they have the right to open and close the argument before the jury.

[Cited in brief in Murray v. Mason, Case No. 9,966.]

5. If the cause of action be usurious, no waiver of the objection by the defendant, in pais, will avail the plaintiff.

6. If a man in Virginia, bona fide, buy a bond at such a discount that the lawful interest upon the bond will produce him 12 per cent. per annum upon the purchase-money, it is not usury; but if he intended it only as a cloak under which to evade the statute, it is usury.

7. If there be no loan of money secured by the bond, and it be purchased bona fide, the transaction is not usurious, although purchased at such a discount as enables the purchaser to obtain an interest of 12 per cent. per annum upon the purchase-money, and although the bond was made to raise money upon, if the purchaser was ignorant of that fact.

8. If the instrument upon which the suit is brought, be a security for the usurious debt, it is void by the statute, and the plaintiffs cannot recover upon it the money which they, as executors of the surety, paid in satisfaction of such usurious debt; although, when they paid it, they were ignorant of the usury; and it was not necessary that the defendant should have informed them of the usury, and instructed them not to pay it, before they paid it.

9. What facts may be inferred from other facts, is a question of law. And from certain facts the jury may infer, that a certain transaction is substantially a loan, although it may appear to have been made in the form and name of a sale of a bond.

This was an action of covenant [by Richard C. L. Moncure and Walter T. Conway] upon the following instrument: "Whereas Mary James has executed her bond or note, dated the 28th of November, 1828, payable to me, on demand, for the sum of $2,620, which said bond or note was merely loaned to me for the purpose of raising money upon; and whereas I have, since the execution

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 13 Pet. (38 U. S.) 345.]

of the said bond or note, as aforesaid, assigned it to Philip Alexander, of Fredericksburg, for value received of him, I do, therefore, hereby bind myself, my heirs, executors, and administrators, to pay and discharge the said bond or note, with all interest that may accrue thereon, when the same shall become due and payable. Given under my hand and seal this 12th day of August, 1829. Anne R. Dermott. (L. S.)"

The "bond or note" mentioned in the above instrument was as follows: "$2,620. On demand I bind myself, my heirs, executors, and administrators, to pay to Anne R. Dermott, her executors, administrators, or assigns, the sum of two thousand six hundred and twenty dollars, for value received, with interest from the date hereof. Given under my hand and seal this 28th day of November, 1828. Mary James. (Seal.)"

Upon which was the following indorsement: "I assign the within to Philip Alexander for value received this 1st day of December, 1828. Anne R. Dermott."

It appeared in evidence that the following payments on account of this "note or bond" were made by Miss Dermott (the defendant) namely, 19th April, 1831, $180. December 27th, 1831, $200. February 7th, 1832, $225, and on May 8th, 1832, $395. And the following payments were made by the plaintiffs, namely, December 6th, 1833, $600. December 28th, 1833, $1,346.52; and December 31st, 1833, $435.55 in full. That this "bond or note" was made to raise money upon to pay a debt due by the defendant to Thomas Poultney & Son of Baltimore, upon the following obligation, namely: "We, Mary James, Anne R. Dermott, William C. Beale, and John Moncure, of the county of Stafford, and Thomas Sedden of the town of Fredericksburg, do hereby promise and bind ourselves, our heirs, executors, and administrators jointly and severally, to pay to Thomas Poultney & Son of Baltimore, their executors, administrators, or assigns, the just and full sum of three thousand six hundred and thirty-three dollars and sixty-one cents on or before the 23d day of November, 1828, as witness our hands and seals this 31st day of March, 1826. Mary James. (Seal.) Anne R. Dermott. (Seal.) Wm. C. Beale. (Seal.) John Moncure. (Seal.) Thomas Sedden. (Seal.) Attest: J. M. Conway; as to Mary James and Anne R. Dermott."

On that instrument was the following indorsement:

| | |
|---|---|
| Paid by T. Sedden, on account of Robert James | $ 629 20 |
| Check on United States Bank at Washington | 628 33 |
| Paid by P. Alexander | 2,340 00 |
| | $3,597 53 |
| Balance due T. Sedden, for which he has a note of J. Moncure's | 36 09 |
| | $3,633 62 |

Thomas Poultney & Son, pay Thomas Sedden, Esq., cash, or order.      Evan Poultney.

That on the same 31st of March, 1826, the said Mary James, (of the county of Stafford,) conveyed in trust to Arthur A. Morson, to secure and indemnify the three sureties Beale, Moncure, and Sedden, against their liability upon that note, about five hundred acres of land and thirteen slaves, in Stafford county, with power to sell the same if the debt should not be paid by Miss James or Miss Dermott. That as early as March 14th, 1828, Mr. John Moncure, in behalf of Miss Dermott, applied to Mr. Philip Alexander, of Fredericksburg, to obtain from him money to pay off this debt to Poultney & Son, and that Mr. Alexander finally determined that he would give $2,200 for a bond to be given by Miss James, payable in five years, for $3,400; but he would require a deed of trust from her (Miss James) of her land and slaves; and that the balance which would be due to Poultney & Son over and above the $2,200 to be placed in his (Alexander's) hands so that he might pay the debt to Poultney & Son and get a release of the deed of trust already given to Mr. Morson to secure the sureties Beale, Moncure, and Sedden, and take a new deed of trust for his security. That Miss James was the defendant's aunt, and the defendant either lived with her, or near her, at the time the negotiation was going on with Mr. Alexander about raising the money, and was in habits of intimacy with her. That Miss James and Mr. Alexander were well acquainted with each other. That the money to be raised was solely to pay off the debt to Poultney & Son, for which Miss James was bound as principal, and had given a deed of trust upon her land and slaves. That on the 8th of December, 1828, the said Mary James conveyed her land and slaves to John Moncure in trust to secure to Mr. Alexander the payment of her bond on the 1st of December, 1830. That on the 24th of November, 1828, (four days before the date of Miss James's bond) Mr. Alexander, in a letter to Mr. John Moncure, who was conducting the negotiation on the part of the defendant, says, "and as the profit on the transaction in which I am about to engage will be small, I will have nothing to do with it unless every thing is clear and perfectly indisputable." He then makes particular inquiry as to Miss James's title to the land and slaves; and says, "it is absolutely necessary that I should have all this information before I engage in the transaction. There is now but little time left to obtain it; perhaps too little. If I pay the $2,350 on Wednesday, it must be with the distinct understanding that, if the business be not arranged to my entire satisfaction, that Mr. Sedden, Mr. Beale, and yourself refund me the money I pay; which will leave you all precisely in the situation you would be placed if I had nothing to do with the business." "I cannot pay the money on Wednesday, without having a distinct understanding

with Mr. S., Mr. B., and yourself as to the repayment of the money I pay in case the business shall not be arranged to my satisfaction." And in the postscript he says, "you entirely misunderstood my views, if you supposed I was willing to purchase paper to produce me twelve per cent. on the money paid at the end of five years. My view was that it should, upon the money advanced, produce me annually twelve per cent. You will find, upon a calculation, that the sum I advanced, by compounding the interest at the end of each year, will not produce to me more than about eight per cent. Now it can hardly be expected that I would advance money and wait five years upon a security somewhat doubtful, and at last to receive only eight per cent., or a little over common bank interest paid each sixty days and compounded. I am willing to enter into the transaction if I can realize what were my views, twelve per cent. upon the money annually." The defendant also produced in evidence a letter dated November 25th, 1828, from Miss James to Mr. P. Alexander, in which she says, "my niece Miss Anne R. Dermott informs me she contemplates selling and assigning to you my bond for $2,880, dated the 22d of this month, and payable on demand. I am anxious to obtain time for the payment of the same; and propose, should you take the assignment, to place the debt upon a footing of perfect safety if you will grant the time I wish, say five years from the date of the bond, by conveying to a trustee of your own selection, land and slaves amply sufficient to secure both the principal and interest of the debt to be paid at the expiration of the five years from the date of the note. If you take an assignment of the note and accede to my proposition, I hereby bind myself, my heirs, executors and administrators, to execute a deed of trust when tendered to me, on the following property; namely, all my lands in the county of Stafford and my slaves," (naming them.) "The property is at present under a lien to secure Mr. Moncure, Mr. Beale, and Mr. Sedden as my securities to Mr. Poultney of Baltimore; but these gentlemen will release the property, or, if they think proper, give you the benefit of the lien."

And the following letter from Mr. Alexander to Miss James. dated, "Fredericksburg, 28th November, 1828": "Dear Madam—I received your letter this morning, and am willing to take the bond, provided you will agree to pay me five hundred dollars annually, and the balance at the expiration of the five years, and upon the debts being made perfectly secure. Yours, respectfully, P. Alexander."

It appeared in evidence that the negotiation for the money had been going on from the 14th of March to the 28th of November, between Mr. Alexander and Mr. John Moncure, as the friend and agent of Miss Dermott. That in every application of Mr. Moncure to Mr. Alexander to advance money, he avoided saying any thing to him in relation to the note or bond of Miss James being executed for the purpose of raising money upon it for the defendant, because he believed that if he did, Mr. A. would have declined making any arrangement whatever to advance the money required by the defendant. But in every application made to Mr. A. by Mr. M. on the occasion, he called on Mr. A. to know what he would give for Miss James's note to the defendant for a certain sum. That the objection to letting Mr. Alexander know that the bond sold to him was a loan to the defendant, was this: he (Mr. M.) believed, from his knowledge of Mr. A. and of his business transactions, that if he informed him that the note or bond was a loan, he would have declined making the advance for it which he did. That the bond of Miss James to the defendant, was made to raise money upon to pay off the debt to Poultney & Son, for which Miss James, and her lands and slaves, were bound; and was a loan to the defendant for that purpose, and was made to suit Mr. Alexander's views, and in pursuance of the agreement made with him by the defendant through her friend Mr. Moncure. There was also evidence tending to show that Miss James knew the purpose for which the bond was given, and the nature of the transaction with Mr. Alexander by which the money was raised. There was no evidence that the defendant informed the plaintiff of it, or warned them not to pay the money; nor that they gave notice to the defendant that they were about to pay it. That from the defendant's several payments on account of the bond, and her silence, the plaintiffs were justified in supposing that she had no objection to their paying it in full.

Mr. Jones and Mr. Swann, for defendants contended that the transaction with Mr. Alexander was usurious, and that the covenant of the defendant to pay that usurious debt directly to Mr. Alexander, was a security for the debt, and was void under the statute of Virginia, which enacts that all "covenants" "for the payment of money lent, on which a higher interest is reserved or taken than is allowed" by the statute, "shall be utterly void." It is not a covenant to indemnify Miss James; but a covenant to pay the debt due upon Miss James's bond, assigned by the defendant to Mr. Alexander. The pretence of its being a sale of the bond, is a mere cloak for the usury. Mr. Alexander insisted upon having twelve per cent. per annum for his money, and prescribed the security which should be given, namely, Miss James's bond and deed of trust. The bargain was made before the bond was drawn and executed; and the bond was made to conform to Mr. Alexander's "views."

Mr. Key and Mr. Dunlop, contra, contended that the covenant was in legal effect a covenant of indemnity only. Although Miss

James is not named as a party to the covenant, and nothing is said about indemnifying her, yet, as it was delivered to her, and as the payment of the money to Mr. Alexander would in effect be equivalent to indemnification, the legal construction of the instrument is that it is a contract of indemnity. Miss James was an innocent surety. There is no evidence she knew of the usury when she gave her bond. The statute of usury does not reach an indemnifying bond. Carter v. Cutting, 5 Munf. 237–239; Rice v. Mather, 3 Wend. 62; Robinson v. May, Cro. Eliz. 588; Button v. Downham, Id. 643, Noy, 73; Ford v. Keith, 1 Mass. 139. But the debt to Alexander was not usurious. He had a legal right to purchase the bond at any discount. Hansbrough v. Baylor, 2 Munf. 36; Taylor v. Bruce, Gilmer, 42; Whitworth v. Adams, 5 Rand. 377; Parker v. Rochester, 4 Johns. Ch. 329. The defendant is estopped to deny the validity of Miss James's bond. Rainsford v. Smith, Dyer, 196a, pl. 41; 5 Wheel. Abr. 106; 8 Cow. 102; Miller v. Stewart, 9 Wheat. [22 U. S.] 702–704; De Wolf v. Johns, 10 Wheat. [23 U. S.] 367.

Mr. Jones and Mr. Swann, in reply. Miss James was bound in the sealed note to Poultney & Son, and made her bond to raise money upon it to pay that note. She was an original party to the usury, and the money was raised for her benefit, as well as that of the defendant. She had given her obligation to indemnify three of the five obligors in that sealed note, all of whom were jointly and severally bound to Poultney & Son. In that note Miss James signs as principal and in her obligation to indemnify the three sureties she calls it her debt and makes herself the principal debtor. The defendant bound herself absolutely to pay the usurious debt directly to Alexander. In the cases cited from Cro. Eliz. the contract was to indemnify the surety from suits on account of the usurious bond; and the reason given for the judgment in those cases is, "for that the surety, by intendment, cannot know of the corrupt contract, to plead it in avoidance of the bond; wherefore the principal ought to take care thereof." But in the present case Miss James had knowledge of the usury. The money was raised as much for her use as for that of the defendant. The covenant of the defendant is not to indemnify, but to pay the original debt. The cases of indemnity, therefore, do not apply. In the case of Dowman v. Butter, Noy, 73, which was "on a counter bond to save harmless" Walmesly said, "the plaintiff shall recover. For that counter bond was made bona fide, and perhaps the surety was not conusant of the usurious contract, and then, he cannot, nor ought to plead that; as if error had been in the first suit; yet the surety shall recover upon the counter bond, although that he takes no advantage of the error. So if the surety had been an infant, and had not pleaded nonage. And that counter bonds mentioned in the statute 13

Eliz. are intended for payment of money to him that lent the money; and not between him that borrows and the surety." "Note, the saving harmless is the substance of the counter bond."

The covenant of the defendant to pay the debt to Mr. Alexander was an additional security to him for the usurious debt. The defendant, if liable at all, was liable, although Miss James or her executors had never paid a cent of the debt, and they might have recovered of her the whole amount for the benefit of Mr. Alexander. Miss James might have avoided her own bond by the plea of usury, and yet recovered the whole debt from the defendant. If the plaintiffs knew that it was a debt due by the defendant, they were bound to inquire of her whether it was due, or whether she had any defence; and if they paid it without such inquiry, they paid it in their own wrong, and are now lending themselves to Mr. Alexander to enable him to recover of the defendant a debt which they could not recover from Miss James. In the present case the breach of covenant assigned is, that the defendant did not pay the debt to Mr. Alexander; not that she did not indemnify Miss James. A bond to indemnify against an usurious contract may be good, but a bond to pay the usurious debt is void, whether the obligor knew that it was usurious or not. In the case from Mass. Rep. the plaintiff had no knowledge of the usury when he indorsed the note, and the notice given to him afterwards and before he paid the money, was only a notice that there was usury, but not of the particulars, so as to enable him to plead the usury and maintain his plea; and there was no instruction not to pay it. But here all the parties were concerned in the usurious contract, with full notice of all the circumstances. In Carter v. Cuting, Mr. Lee, the executor, was not warned not to pay the debt; he paid it; but the court refused to allow the payment in his administration account, and he had to repay it to the heirs of Carter. Ord, Usury, 123, 125; Potkins's Case, 3 Leon. 63; Dowman v. Butter, Noy, 73. The defendant is not estopped to deny the legal validity of the bond, or any other matter of law.

On the trial, the counsel for the plaintiffs prayed the court to instruct the jury, "that it is not competent for the defendant in this action to deny, by plea or otherwise, the validity of the note of 28th November, 1828, recited in the covenant on which this suit is brought; and that she is estopped from setting up, in this action, any alleged usury, as affecting the validity of said note."

Which instruction, THE COURT (THRUSTON, Circuit Judge, absent) refused to give.

The counsel of the plaintiffs then prayed the court to instruct the jury, "that the plaintiffs are entitled to recover in this action, the sums which the jury are satisfied, from the evidence, were paid by the plaintiffs to Philip Alexander, on the bond dated 28th

November, 1828, unless the defendant proves to the jury that before such payments, the plaintiffs were notified that the bond of 28th November, 1828, was tainted with usury, and instructed to dispute the same."

Which instructions, THE COURT also refused; principally because they were of opinion, that the contract of the defendant was not a contract for indemnity, but an absolute obligation to pay the bond assigned to Philip Alexander, and that if that bond was usurious, this bond of the defendant to pay it was also usurious and void. See Story, Confl. Laws, 206.

The plaintiff's counsel then prayed the court to instruct the jury, "that if they should believe, from the evidence. that the note of Mary James to the defendant, assigned by her to Alexander, dated 28th November, 1828, was made on an usurious agreement entered into between said defendant and said Alexander, but that the plaintiffs had no knowledge of such usury at the time they were called upon to pay the balance due on the note, nor at any time before, and paid the same under a belief that the same was bona fide due, and without any knowledge that there was any objection to the validity of said note, and without any notification or communication from the defendant, then the plaintiffs are entitled to recover."

Which instruction, THE COURT also refused.

Whereupon the plaintiff's counsel prayed the court to give the jury the same instruction, with this addition: "Unless the jury should be satisfied from the evidence, that the said Mary James knew of the said usurious agreement under which the said note was given and assigned as aforesaid."

But THE COURT still refused to give the said instruction, so amended.

Whereupon the counsel of the plaintiffs prayed the court to instruct the jury, as in the former prayer, to the words "communication from the defendant," inclusive, with the following addition, to wit: "And if the jury believe from the evidence, that the defendant waived and abandoned all objection to the validity of said note, and assented that the same should be considered as a valid and legal obligation, then the plaintiffs are entitled to recover; and it is competent for the jury to infer such waiver and assent, if they shall believe, from the evidence, that the defendant, after obtaining the said money, made payments of interest as the same became due, and expressed her desire and intention to pay the said note, and her anxiety to save her aunt's property from sale, under the said deed of trust."

But THE COURT still refused to give the instruction, as thus further amended.

The plaintiff's counsel then prayed the court to instruct the jury, "that if they believe from the evidence, that there was no loan of money from Alexander to the defendant, secured by the bond of the 28th of November, 1828, but that the said bond was bona fide purchased by said Alexander of the defendant, at a discount exceeding the legal rate of interest, the said Alexander not knowing, when he purchased the said bond, that the same was loaned by the said Mary James to the defendant solely to raise money on, the transaction is not usurious, and the plaintiffs are entitled to recover, in this action, the moneys paid by them to Alexander on said bond."

Which instruction, THE COURT gave, as prayed.

The plaintiff's counsel further prayed the court to instruct the jury, "that if, from the evidence, they should believe that Philip Alexander, when he paid the money, and took the note as aforesaid, intended to buy the said note for the amount given on it, not knowing that the note was made by Miss James to the defendant, in order to raise money on it, and did not mean, by disguising the advance under the form of a purchase, to evade the statute of usury; then such purchase was lawful."

Which instruction, also, THE COURT gave, as prayed.

Whereupon the defendant's counsel moved the court to instruct the jury, as follows, to wit: "That if the jury find and believe from the evidence aforesaid, that for several months before the execution and assignment of the bond or note mentioned and described in the covenant upon which this suit is brought, there were such negotiations and propositions pending between said John Moncure, (acting in behalf of defendant,) and Philip Alexander, as are mentioned and set forth in said affidavits of Moncure and Alexander, and in the papers and exhibits therein referred to; that the true and genuine nature and object of such negotiations and propositions, and of the successive arrangements and understandings resulting from them, as really contemplated by both parties, were, that said Alexander should make an advance of money to defendant, upon a future bond or note of said Mary James, payable to defendant, and by her to be assigned to said Alexander, under the name and form of a sale of such bond or note, at a discount above the legal rate of interest; that discount from the amount of such bond or note should be so adjusted as that the difference between the full amount of the bond or note, and the sum advanced on it, should be equivalent to an interest at the rate of 12 per cent. per annum on the sum actually advanced, for the time of forbearance to be given on such bond or note. That all the said preliminary negotiations, propositions, and arrangements, were just before the execution and assignment of the bond or note referred to in the covenant set forth in the plaintiff's declaration, (such bond or note being the same note under seal, or bill obligatory above given in evidence by plaintiffs with the said covenant, and annexed to the said original affidavit of said John Mon-

cure as aforesaid,) terminated in an arrangement so modifying the before-pending propositions and arrangements aforesaid, as that said Alexander should immediately advance the defendant two thousand three hundred and forty dollars, and that defendant should assign to him a note or bond thereafter to be drawn and executed by said Mary James, for such amount as should make the difference between the sum so advanced and the sum to be ultimately received by him for the principal and interest of such bond or note, equivalent to an interest of twelve per cent. per annum on the sum so advanced, according to the principal on which said Alexander, in his aforesaid letter (B 1,) to said Moncure, insisted that the profits of the transaction should be calculated and secured, and that the payment of such bond or note should be collaterally secured by a deed in trust of the land and slaves of said Mary James. That the said Alexander, in pursuance and execution of such arrangement and understanding, did advance the two thousand three hundred and forty dollars to defendant, or for her use. That the said Mary James, in the pursuance and execution of the same arrangement and understanding on her part, did, afterwards, on the 28th day of November, 1828, execute and deliver the said note under seal, or bill obligatory of that date, and, afterwards, on the 10th December, 1828, duly execute and deliver to said J. Moncure and P. Alexander the said deed in trust, bearing that date, as above given in evidence by defendant, and annexed to the said cross-examination of said Moncure, and marked (D 2); and that the defendant, in the pursuance and execution of said arrangement and understanding, did assign the said bill obligatory to said Alexander, immediately on the execution of the same by said Mary James. That the amount of said securities, and the time with which the said Mary James was indulged, by said deed in trust, for payment, were knowingly and designedly calculated and adjusted by and between said Alexander and said Moncure, in behalf of defendant, so as to produce, in the end, a yearly interest of twelve per cent. on the sum advanced, during such time of indulgence; and that the principal and interest secured by the said instruments, were intended and designed, by both said parties, to amount, and did, in fact, amount, to greatly more than the sum so advanced, with legal interest for such time of indulgence as aforesaid; and did, in fact, substantially secure to said Alexander a yearly interest of twelve per cent. on the sum so advanced by him. Then the jury, if they find such facts as aforesaid satisfactorily proved, and fairly deducible from the evidence aforesaid, may properly infer from such facts, and fairly presume, that the transaction was substantially a loan, within the meaning of the statute against usury; notwithstanding it may appear to have been made in the form and name of a sale of the said Mary James's bond or note;

and then the jury may, from the same facts and circumstances, if proved and deduced as aforesaid, also properly infer, and will presume, that the sum of money deducted and retained by the said Alexander from the nominal amount of said bond or note, was substantially usurious interest under another name, for the forbearance of the money so lent or advanced."

Which instruction, THE COURT gave as prayed.

Mr. Jones, for defendant, contended for the right to open and close the argument to the jury, as the defendant held the affirmative of the issue; and cited Archbold's Civil Practice, 169, 170; Goodtitle v. Braham, 4 Term R. 497.

But inasmuch as the plaintiffs were to prove damages sustained by the breach of the covenant, THE COURT decided that they had a right to open and conclude the argument to the jury.

After the cause had been argued to the jury by Mr. Dunlop, for plaintiffs, and by Mr. Swann and Mr. Jones, for defendant, Mr. Jones moved the court to instruct the jury (in explanation of the fourth and fifth instructions prayed by the plaintiff's counsel, and given by the court) as follows: "That if the said note was both drawn and dated after a distinct understanding and agreement had been entered into with the said Alexander to take an assignment of such a note thereafter contingently to be drawn, at a discount exceeding the legal rate of interest, and the said Alexander knew, at the time he took the note, that it had been drawn and assigned for the specific purpose of carrying out the said previous understanding and agreement with him; or if it was understood and known by him, throughout all the preliminary negotiations which led to the final arrangement, that they had reference to a contingent note thereafter to be drawn and assigned for such specific purpose, and that such note was to be framed conformable to such final arrangement when it came to be concluded on between the parties; then it is to be presumed he had sufficient knowledge of the purpose for which said note was drawn by Mary James, within the meaning of the said fourth and fifth instructions, to affect him with the consequences of such knowledge; that is to say, that such knowledge of the specific purpose and object of the parties to the note, was sufficient notice that such were the only purpose and object, and that the bond or note was for no other consideration, if such be, in truth, the fact."

Which instruction THE COURT refused to give; saying that the matter was proper to be left to the jury, to draw such inferences as they should be satisfied ought to be drawn from the evidence in that respect.

Mr. Key, for plaintiffs, then prayed the court to instruct the jury, that if they should be satisfied, by all the evidence in the cause, that it was a loan at usurious interest, under cover of a sale, the contract was usurious and

void; but if they should be of opinion, from the evidence, that it was a sale and purchase of the bond of Mary James, then it was not usurious.

Mr. Jones, for defendant, agreed to the instruction, with an addition, saying, in effect, that if the jury found the facts to be as stated in his former prayer, it was a loan, and not a sale.

Mr. Key accepted and agreed to this modification of the instruction.

Verdict for the defendant.

Both parties took bills of exception. The plaintiffs carried the cause to the supreme court of the United States by writ of error, where the judgment of this court was reversed, and a venire de novo awarded, at January term, 1839. 13 Pet. [38 U. S.] 345.